**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Peggy Ann Rivera, | No. CV-22-08095-PCT-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of the Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Peggy Ann Rivera's Application for Disability Insurance Benefits under the Social Security Act by the Commissioner of the Social Security Administration. Plaintiff filed a Complaint (Doc. 1) with this Court seeking review of that denial. The Court has reviewed the briefs (Docs. 14, 18, 21) and the Administrative Record ("A.R.") (Doc. 11), and now affirms the Administrative Law Judge's ("ALJ") decision.

**I.      BACKGROUND**

Plaintiff filed an Application for Disability Insurance Benefits on March 27, 2019, alleging disability beginning September 24, 2018. (A.R. at 216-222.) Plaintiff's claim was denied initially on June 27, 2019, and upon reconsideration on December 10, 2019. (*Id.* at 67-68, 82-83.) Thereafter, Plaintiff filed a written request for a hearing, (*Id.* at 127-128), and a telephonic hearing was held on February 11, 2021. (*Id.* at 33-66.) The ALJ denied Plaintiff's application on May 3, 2021, (*Id.* at 10-32), and the Appeals Council denied Plaintiff's request for review on March 30, 2022. (*Id.* at 1-3.) Plaintiff now seeks judicial

review with this Court pursuant to 42 U.S.C. § 405(g).

The Court has reviewed the medical evidence and will discuss the pertinent evidence in addressing the issues raised by the parties. Upon considering the medical evidence and opinions, the ALJ evaluated Plaintiff's disability claim based on the following severe impairments: obesity, degenerative disc disease, status post endometrial carcinoma, status post laparoscopic hysterectomy, lumbar and cervical spondylosis, and lower extremity neuropathy. (*Id.* at 15.)

The ALJ found that Plaintiff did not have any impairments or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 19-20.) Next, the ALJ determined Plaintiff's residual functional capacity ("RFC").[1] The ALJ found:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is able to frequently climb ramps and stairs; is unable to climb ladders, ropes or scaffolds; but can frequently balance, stoop, kneel, crouch, and crawl.

(*Id.* at 20-25.) Based on this RFC, the ALJ found that Plaintiff "is capable of performing past relevant work as a dining room manager and an office manager." (*Id.* at 26.) Ultimately, having reviewed the medical evidence and testimony, the ALJ concluded that Plaintiff was not disabled from the alleged disability onset date through the date of the decision. (*Id.* at 26.)

## II.  LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable

---

[1] Residual functional capacity refers to the most a claimant can still do in a work setting despite his or her limitations. 20 C.F.R. § 404.1545(a)(1).

person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). The substantial evidence threshold "defers to the presiding ALJ, who has seen the hearing up close." *Biestek v. Berryhill*, — U.S. —, 139 S. Ct. 1148, 1157 (2019); *see also Thomas v. CalPortland*, 993 F.3d 1204, 1208 (9th Cir. 2021) (noting substantial evidence "is an extremely deferential standard").

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

## III. ANALYSIS

Plaintiff raises two arguments for the Court's consideration. First, Plaintiff contends that the ALJ erred in rejecting the opinion of her treating physician, Linda Haggard, P.A.-C. (Doc. 14 at 10.) Second, Plaintiff argues that the ALJ erred in rejecting her symptom testimony. (*Id.* at 18.)

### A. Treating Physician's Opinion

Plaintiff first argues that the ALJ committed materially harmful error by rejecting the medical assessments from Ms. Haggard without providing sufficient explanation that included a rational interpretation of the record supported by substantial evidence, including failing to address the "supportability" and "consistency" factors under the agency's regulations. (*Id.* at 10.)

In 2017, the Commissioner revised the regulations for evaluating medical evidence for all claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). As Plaintiff's claim was filed after the effective date, the revised rules apply. (A.R. at 216-222.) Unlike the old regulations, the revised rules do not require an ALJ to defer to the opinions of a treating physician nor assign every medical opinion a specific evidentiary weight. 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *see also Lester v. Charter*, 81 F.3d 821, 830–31 (9th Cir. 1995) (requiring an ALJ to provide "specific and legitimate reasons that are supported by substantial evidence in the record" when rejecting a treating physician's opinion).

The revised rules instead require the ALJ to consider all opinion evidence and determine the persuasiveness of each medical opinion's findings based on factors outlined in the regulations. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). The most important factors considered by an ALJ are "consistency" and "supportability." 20 C.F.R. § 404.1520c(b)(2). Supportability is defined as how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical findings." 20 C.F.R. § 404.1520c(c)(1). Consistency means "the extent to which a medical opinion is

- 4 -

'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(2)). The ALJ should also treat opinions as more persuasive if they are more consistent with "other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). Lastly, the ALJ can also consider, to a lesser degree, other factors, such as the length and purpose of the treatment relationship, the kinds of examinations performed, and whether the medical source actually examined the claimant. *Woods*, 32 F.4th at 792.

Recently, the Ninth Circuit held that the revised rules clearly intended to abrogate its precedent requiring ALJs to provide "specific and legitimate reasons" for rejecting a treating physician's opinion. *Id.* Nevertheless, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* Therefore, an ALJ, "must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how it considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. § 404.1520c(b), (b)(2)) (internal citation omitted).

The record reflects that Ms. Haggard completed a Medical Assessment of Ability to do Work Related Activities in November of 2019. (A.R. at 878-881.) Ms. Haggard opined that Plaintiff could sit a total of three hours and stand/walk a total of three hours in an eight-hour day, and "must change positions frequently and must keep cane for ambulation." (*Id.* at 878.) She found that Plaintiff had upper extremity limitations, including that she could frequently lift or carry up to five pounds and occasionally lift six to ten pounds. She could occasionally handle, grip, or grasp on the right, and frequently handle, grip, or grasp on the left. (*Id.* at 878-879.) She further found that Plaintiff could push or pull frequently with both upper extremities, and could rarely perform fingering or fine manipulation. (*Id.* at 879.) Ms. Haggard stated that pain and fatigue limited her to a moderately severe degree, and she determined that Plaintiff had "significant fatigue qualifying for diagnosis of

chronic fatigue syndrome with fibromyalgia." (*Id.* at 880-881.) Ms. Haggard concluded that Plaintiff required a cane as an assistive device, she would miss work due to fatigue about fourteen days per month, and fatigue would cause her to be off task a total of four hours in a typical workday. (*Id.* at 881.)

Ms. Haggard completed another assessment in August of 2020, again opining that Plaintiff could sit for three hours and stand/walk for three hours in an eight-hour day, and "must change positions frequently." (*Id.* at 1067.) Ms. Haggard found that Plaintiff could frequently lift or carry up to five pounds and occasionally lift six to twenty pounds. She could occasionally handle, grip, or grasp on the right, and rarely handle, grip, or grasp on the left. (*Id.* at 1067-1068.) She determined that Plaintiff could push or pull occasionally with the right and rarely with the left, and found that she could occasionally perform fingering or fine manipulation with both hands. (*Id.* at 1068.) Again, Ms. Haggard stated that Plaintiff's pain and fatigue would cause her to be off task at work to a moderately severe degree and found that Plaintiff had "gastrointestinal difficulties – chronic nausea, vomiting, diarrhea." (*Id.* at 1069.)

Having considered these assessments, the ALJ found that although Ms. Haggard's opinion was partially supported by her own treatment notes, her diagnosis of chronic fatigue and fibromyalgia was not supported by the medical evidence. (*Id.* at 25 (citing A.R. at 748-795, 1166-1223).) The ALJ additionally found that there was no explanation or support regarding the reason for Plaintiff's manipulative limitations, and that Ms. Haggard's statement that Plaintiff must change positions as needed was not corroborated in her treatment records or the medical evidence record as a whole. (*Id.*)

The ALJ also found that Ms. Haggard's assertion that Plaintiff would be absent from work due to fatigue for fourteen days a month was inconsistent with Plaintiff's ability to perform household chores, prepare meals, do her own grocery shopping, pick up her medications, attend to her hygiene, drive a car, camp, and travel. (*Id.* (citing A.R. at 255-259, 289-291, 883, 52-53).) Lastly, the ALJ found that Plaintiff's required use of a cane was inconsistent with her ability to ambulate normally. (*Id.* (citing A.R. at 882-888, 902,

1106).) Thus, the ALJ was not persuaded by either of Ms. Haggard's medical assessments.

The Court finds that the ALJ adequately addressed the supportability and consistency factors in finding Ms. Haggard's opinions unpersuasive. As to supportability, the ALJ explained that Ms. Haggard's diagnoses of fibromyalgia and chronic fatigue lacked support from the record. (*Id.* at 25.) Plaintiff argues that the ALJ's conclusion is unexplained and states that notations of Plaintiff's pain and fatigue supporting Ms. Haggard's diagnoses occur throughout the record. Contrary to Plaintiff's claim, however, the ALJ specifically cited to Ms. Haggard's medical records and assessments, (*Id.* at 18 (citing A.R. at 881, 1176)), and explained that "the record does not include evidence of at least 11 positive tender points on physical examination or of repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, as required by SSR 12-2p." The ALJ continued her analysis finding that "there is no objective medical evidence or diagnostic testing supporting a diagnosis of chronic fatigue syndrome." (*Id.*)

Regarding consistency, the ALJ found a lack of support in the medical records for Plaintiff's manipulative limitations and Ms. Haggard's statement that Plaintiff had to change positions as needed and required the use of a cane. (*Id.* at 25.) Although Plaintiff again argues that the ALJ's finding is unsupported and belied by the record, the ALJ addressed these issues in her discussion of the objective medical evidence. (*Id.* at 22-23, 25.) For example, the ALJ specifically cited to evidence demonstrating that Plaintiff had normal muscle strength and tone in her upper and lower extremities; was able to ambulate normally and without difficulty; could sit, stand, and walk without discomfort; had a normal gait and appropriate balance; had negative straight leg raise test; and was able to pick up small coins with both hands, screw a nut into a bolt with both hands, and write her name without difficulty.[2] (*Id.* at 22-23, 25 (citing A.R. at 882-888, 910, 977, 986, 1017, 1160).) The ALJ also found Ms. Haggard's finding that Plaintiff would be absent fourteen

---

[2] In her discussion of the objective medical evidence, the ALJ cited to evidence gathered during a consultative examination performed by Douglas Denney, P.A.-C. (*Id.* at 22-23.) While the ALJ relies on the cited evidence to support her findings, the ALJ ultimately found the remainder of Denney's opinion, concluding that Plaintiff's physical limitations would not persist for 12 continuous months, unpersuasive. (*Id.* at 24.)

- 7 -

days every month inconsistent with Plaintiff's activity level. (*Id.* at 25.) The ALJ specifically identified Plaintiff's ability to perform household chores, prepare meals, do her own grocery shopping, pick up her medications, attend to her hygiene, drive a car, camp, and travel. (*Id.* (citing A.R. at 255-259, 289-91, 883).)

The Court finds the ALJ properly explained how she considered the supportability and consistency factors, and provided substantial evidence to support her conclusion. While Plaintiff argues that the record supports her position, when the evidence supports more than one rational interpretation, the ALJ's decision must be upheld. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *see also Thomas*, 278 F.3d at 954. Moreover, it is the ALJ's responsibility, not this Court's, to determine credibility and resolve ambiguities in the record. *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020) ("Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'") (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Accordingly, the ALJ did not err in finding Ms. Haggard's assessments to be unpersuasive.

**B.      Plaintiff's Symptom Testimony**

Plaintiff argues that the ALJ committed materially harmful error by rejecting Plaintiff's symptom testimony without "specific, clear and convincing reasons supported by substantial evidence" in the record. (Doc. 14 at 18.)

In evaluating a claimant's symptom testimony, the ALJ employs a two-step process. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ considers whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (internal quotation marks omitted)). Second, if the claimant presents such evidence, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."

*Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The Ninth Circuit has expressly held that a claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282 (internal citation omitted). The clear and convincing standard is the most demanding in Social Security cases. *Garrison*, 759 F.3d at 1015. And an ALJ's "vague allegation" that a claimant's symptom testimony is inconsistent with the medical record does not meet the clear and convincing standard. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102–03 (9th Cir. 2014). Similarly, an ALJ cannot satisfy the clear and convincing standard based solely upon "a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch*, 400 F.3d at 680. Rather, in making credibility determinations, an ALJ may consider a variety of factors in evaluating symptom testimony including, "[the claimant's] reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin., Comm'r*, 119 F.3d 789, 792 (9th Cir. 1997) (citations omitted).

According to the record, Plaintiff testified she initially stopped working because of pain, weakness, and dizziness caused by her pituitary tumor and dysautonomia, and was later diagnosed with uterine cancer. (A.R. at 45-47.) She testified she used a cane "about half the time, when the pain gets really bad" and felt that it helped keep pressure off of her right leg. (*Id.* at 49-50.) Plaintiff also testified she had pain in her neck that radiated into her arms, trouble gripping and grasping things, and tremors in her hands. (*Id.* at 56-57.) She stated that she could sit for fifteen to twenty minutes before she had to stand up, and could stand for ten to fifteen minutes at a time. (*Id.* at 51-52.) Also, Plaintiff stated that she lived alone and could cook simple food for herself, and that she went to the food bank for her groceries. (*Id.* at 52.) Plaintiff testified she could go to the pharmacy for herself and carry one bag at a time from the supermarket. (*Id.* at 52-53.) She stated that she flew to

Texas a few times to visit her niece, who helped her after she became homeless. (*Id.* at 53.) Plaintiff further testified that she had headaches that varied from a few minutes to several hours, and had urinary and bowel incontinence requiring her to use the bathroom ten to fifteen times in the first few hours of being awake. (*Id.* at 54-55.) Finally, Plaintiff stated that she had to lie down several times during a typical day. (*Id.* at 56.)

In evaluating her testimony, the ALJ determined that step one was satisfied as "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (*Id.* at 21.) The ALJ, however, rejected Plaintiff's symptom testimony, offering two reasons. First, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 21-23.) Second, the ALJ reasoned that Plaintiff "has not described an activity level that is as limited as would be expected given her reports of disabling symptoms and limitations." (*Id.* at 23-24.)

### 1. Inconsistency with Objective Medical Record

In support of her first reason for discounting Plaintiff's symptom testimony, the ALJ identified multiple examples of medical evidence in the record addressing Plaintiff's impairments and limitations. (*Id.* at 16, 18, 21-23.) As to Plaintiff's back/body pains and testimony that she uses a walking cane about half the time, the ALJ identified, for instance, "normal" EMG testing in June 2019 revealing no electrophysiological evidence of radiculopathy, plexopathy, neuropathy, or myopathy affecting the upper or lower extremities, and a July 2020 EMG revealing only "mild" polyneuropathy. (*Id.* at 22-23.) The ALJ noted that although further imaging studies in July 2019 revealed age-appropriate degenerative changes of the spine, upon examination in November 2019, Plaintiff was observed to be in no acute distress. (*Id.* at 22.) Examination revealed that she sat in her chair without discomfort, "was able to stand, walk to the examination table, get onto it and sit on the table without assistance or difficulty." (*Id.*) Plaintiff demonstrated normal gait, "was able to stoop without difficulty, . . . [and] was able to lift . . . each foot off the ground

and stand without assistance." (*Id.* at 22-23.) Plaintiff had normal muscle strength and normal muscle bulk in her upper and lower extremities, and she exhibited normal range of motion in her extremities/spine and her straight leg raise test was negative. (*Id.* at 23.) Records revealed that, based on these findings, Plaintiff's prescribed assistive device was not medically necessary. (*Id.*)

The ALJ additionally identified medical records addressing Plaintiff's endometrial carcinoma, dizziness, vomiting, incontinence, and testimony that she used the bathroom ten to fifteen times during the first few hours after she got up. (*Id.* at 16, 18, 22-23.) The ALJ found that although Plaintiff was treated for endometrial carcinoma with a laparoscopic hysterectomy, the record revealed that Plaintiff had no symptoms or limitations following her surgery. (*Id.* at 22-23.) The ALJ also noted that while Plaintiff reported incontinence after surgery, she denied experiencing any incontinence to her other medical providers. (*Id.* at 22.) Similarly, the ALJ found that Plaintiff never reported to treatment providers that she used the bathroom ten to fifteen times when she got up. (*Id.* at 16, 23.) Lastly, as to her dizziness and vomiting, the ALJ found that there was no clear explanation and a lack of any identifiable impairment diagnosed to explain these symptoms. (*Id.* at 18, 23.)

Plaintiff contends that the ALJ failed to connect specific medical evidence to inconsistencies in her symptom testimony. But the ALJ's opinion addressed each of Plaintiff's alleged impairments in separate paragraphs and examined the objective medical evidence relating to the individual impairments. (*Id.* at 16, 18, 22-23); s*ee Garrison*, 759 F.3d at 1018 (an ALJ "must rely on examples to show why they do not believe that a claimant is credible"). The listed evidence directly relates to the inconsistencies the ALJ found in Plaintiff's symptom testimony.

Plaintiff also argues that the ALJ based her decision on normal findings in the record but failed to consider findings that were consistent with Plaintiff's symptom testimony. However, "[w]here evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion [that] must be upheld; and in reaching his findings, the ALJ is entitled

to draw inferences logically flowing from the evidence." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citation omitted); *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Again, the trier of fact "must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *see Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003) ("If the evidence can support either outcome, the Commissioner's decision must be upheld."). Thus, the ALJ properly relied on the objective medical evidence in rejecting Plaintiff's symptom testimony.

### 2. Plaintiff's Daily Activities

In support of her second reason for discounting Plaintiff's symptom testimony, the ALJ identified multiple activities from Plaintiff's testimony, daily activity questionnaires, and consultation exam reports indicating that Plaintiff was not as limited as would be expected given her reports of disabling symptoms and limitations. (A.R. at 17-18, 23-24.)

Where the "record reflects that the claimant has normal activities of daily living including cooking [and] house cleaning . . . [this] suggest[s] that the claimant may still be capable of performing the basic demands of competitive, remunerative, unskilled work on a sustained basis." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008). While a claimant is not required to be completely incapacitated to be found disabled, an ALJ may consider the Plaintiff's daily activities to determine whether they are inconsistent with the alleged symptoms. S*ee* 20 C.F.R. § 404.1529(c)(3)(i) (permitting consideration of a claimant's daily activities when weighing symptoms).

Here, the ALJ found that Plaintiff was capable of performing household chores, preparing meals, doing her own grocery shopping, picking up her medications, and traveling. (*Id.* at 17, 23.) Plaintiff indicated that she is capable of driving a car and camping, and she denied that her symptoms caused a significant impact on her activities of daily living. (*Id.* at 17-18, 23-24.) Lastly, the ALJ found that Plaintiff was able to complete self-care activities, was not confined to a bed, and was getting adequate sleep. (*Id.* at 18, 24.)

Plaintiff argues this is an insufficient reason to reject her symptom testimony as the ALJ did not show that a substantial part of a typical day was spent engaged in activities inconsistent with her testimony or consistent with the ability to work. But even if the evidence is not clear on how long or often Plaintiff performed her daily activities, as long as the ALJ's determination is reasonable, it is not the Court's role to second-guess it. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (holding that, even when record was equivocal about how long and often plaintiff engaged in daily activities, because ALJ's interpretation was reasonable the court would not second-guess it). Here, the ALJ provided a reasonable determination based on substantial evidence that Plaintiff's daily activities were incompatible with the severity of her alleged symptoms. Thus, the ALJ did not err in discounting Plaintiff's symptom testimony on this basis. *See Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."); *Singh v. Commissioner of Social Security Administration*, No. CV-19-02315-PHX-MTM, 2020 WL 5757620, at *3 (D. Ariz. Sept. 28, 2020) (finding that an ALJ did not err in discounting plaintiff's allegations of disabling symptoms and limitations because they were inconsistent with her reported activities).

Therefore, the Court finds the ALJ properly relied on "specific, clear and convincing reasons" supported by substantial evidence in rejecting Plaintiff's symptom testimony. *Garrison*, 759 F.3d at 1014–15 (citing *Smolen*, 80 F.3d at 1281).

///
///
///
///
///
///
///
///

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** affirming the May 3, 2021 decision by the Administrative Law Judge and the Commissioner of the Social Security Administration.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment consistent with this Order and close this case.

Dated this 28th day of June, 2023.

Michael T. Liburdi
United States District Judge